IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| BH MEDIA GROUP, INC. | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 7:18CV388 |
| | ) |
| ANDY BITTER | ) |
| 255 Roudabush Drive NW | ) |
| Christiansburg, VA 24073 | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

BH Media Group, Inc. ("BH Media" or "Plaintiff"), by and through undersigned counsel, submits the following Complaint against Andy Bitter ("Bitter" or "Defendant") and shows the court as follows:

### Nature of Action

1. This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336; violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; the Stored Communications Act, 18 U.S.C. § 2070, *et seq.*; the Virginia Computer Crimes Act, Va. Code § 18.2-152.2, *et seq.*; common law conversion; and common law breach of fiduciary duty.

### Parties

2. Plaintiff BH Media Group, Inc. is a Delaware corporation, with its principal place of business in Omaha, Nebraska.

3. Upon information and belief, Defendant Andy Bitter is an individual citizen and resident of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this claim arises under 18 U.S.C. § 1832, *et seq.* and 18 U.S.C. § 1030, *et seq.* This Court has supplemental jurisdiction over the state law and common law claims pursuant to 28 U.S.C. § 1367(a).

5. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and Plaintiff seeks to recover damages in excess of $75,000.

6. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is a citizen and resident of Virginia and the causes of action in this Complaint arise from Defendant transacting business in this Commonwealth and/or causing tortious injury in the Commonwealth by acts or omissions within the Commonwealth while regularly conducting or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods used or consumed or services rendered within the Commonwealth.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims occurred in and around Roanoke, Virginia.

## BACKGROUND

8. BH Media is the owner and operator of thirty-one award winning daily newspapers, including but not limited to, the Roanoke Times (the "Times").

9. BH Media's resources, including the Times, are available online, and BH Media promotes itself and generates pageviews and advertising dollars through various social media

outlets, including Twitter. Plaintiff depends heavily on its online presence to advertise its business, which requires the ability to communicate with existing and potential readers and subscribers and react to online trends in real time. Due to its online presence, the readership and subscribers of the Times live all over the Country, and in many cases, live internationally as well.

10. In August of 2010, Kyle Tucker ("Tucker"), a staff writer focused on Virginia Tech athletics for the Virginian-Pilot (the "Pilot"), created a Twitter account within the scope of his employment, the content of which was to be owned by the Pilot and, eventually, licensed to the Times to engage readers and subscribers, solicit future readers and subscribers, promote the newspapers, and cover issues related to Virginia Tech athletics (the "Account").

11. The Times licensed the Account and its content from the Pilot (the Pilot and Times were jointly owned by Landmark Media Enterprises, LLC ("Landmark")) until BH Media purchased the Times and the Account from Landmark in 2013, at which point BH Media became, and remains, the sole and exclusive owner of the content and the Account.[1] Following that purchase, Defendant's content (including the Account) created for the Times was licensed from BH Media to the Pilot until the end of 2015.

12. Tucker ended his employment with the Pilot in August 2011, and relinquished the Account to the Pilot.

13. In October of 2011, Defendant was hired to fill Tucker's role as a staff writer to focus on Virginia Tech athletics.

---

[1] BH Media is defined herein to include its predecessors-in-interest. At all relevant times, BH Media has been the owner or licensee of the Account and content identified herein.

14. In addition to taking over Tucker's reporting obligations, Defendant was provided access to and the login information for the Account in October of 2011, and from that date to present, Defendant has retained sole access to the Account.

15. Upon information and belief, Defendant updated the Account login information (including user name and password) during the time he managed the Account.

16. The manager of the Account (or those with access rights) has access to unique, nonpublic information. The Account's list of roughly 27,100 followers provides direct, unfettered, and instant access to a unique group of individuals and entities that have affirmatively indicated an interest in the products of the Times, namely its reporting, by following the Account. Likewise, management of the Account provides a unique Twitter Feed visible only to those with access rights that displays various tweets and retweets of any individual or entity that the Account itself follows, which provides invaluable insight into the interests of those individuals and entities and general trends across that curated list of followers. Finally, the manager retains the exclusive right to direct message or "DM" Twitter followers, which creates the opportunity to share private messages and exchange information not publicly available. None of this ancillary information is publicly available to or readily ascertainable from outside sources. The Account and these various sources of information and channels of communication constitute the BH Media trade secrets ("Trade Secrets").

17. During the term of his employment, Defendant was authorized to access the Account (and by default) the Trade Secrets on behalf of BH Media within the scope of his employment and in furtherance of the financial interests of BH Media through promotion of the Times.

18. The primary purpose of the Account is to generate interest in the Times, and by proxy, generate advertising revenue. To generate pageviews on the Times website, the Account manager tweets links to articles published on the Times's website directing users to the Times. Likewise, the Roanoke Times's main Twitter account then retweets the Account's tweets (or vice versa). This utilization of Twitter drives traffic to the Times's website and generates advertising revenue for the Times based on the number of clicks it receives on its various original stories and content.

19. The Trade Secrets are not known by the public or BH Media's direct competitors and would be extremely valuable to them. The Trade Secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure or use.

20. At all relevant times, BH Media has taken extensive efforts to maintain the secrecy of its Trade Secrets by limiting the individuals with access to the Account (only one writer is given access at any given time), maintaining confidentiality obligations with its employees, and maintaining strict IT and institutional protections to prevent disclosure.

21. To protect its Trade Secrets and to comply with applicable laws and regulations, BH Media has adopted written policies that include, but are not limited to, comprehensive confidentiality obligations for its employees and management of BH Media's intellectual property and assets, which are memorialized in an employee handbook (the "Handbook").

22. Pursuant to the Handbook, communication accounts and social media accounts provided by BH Media to employees are to be used to conduct work-related business only and all accounts and communications on those accounts are the property of BH Media. Likewise, users

that have been issued Company-owned information assets, keys or other access items must return them to the Company upon termination of their employment.

23. On numerous occasions, Defendant signed an acknowledgment of receipt of the Handbook pursuant to which he agreed to be bound by its provisions, the most recent of which was signed in 2015.

24. Due to the unique nature of his position, Defendant was entrusted with confidential information related to the Account, namely the login information. Consequently, Defendant owed a duty of loyalty and a fiduciary duty to BH Media to maintain the confidentiality of that information both during and after his employment.

25. On or about June 22, 2018, Defendant notified BH Media that he intended to resign effective July 6, 2018. Defendant indicated that he was leaving BH Media to work for a direct competitor, the Athletic Media Group (the "Athletic") in a similar (if not identical) capacity.

26. On July 6, 2018 BH Media reminded Defendant that it owned the Account, and requested he relinquish the login information for the Account and the Trade Secrets associated therewith so that BH Media could transition the Account to the staff writer that would ultimately replace Defendant (as had previously been done).

27. Defendant refused to relinquish the Account despite the obligations under the Handbook, and despite his awareness that the Account was property of BH Media.

28. As of the date of this filing, Defendant has used and continues to use the Account and Trade Secrets to communicate with BH Media's followers without BH Media's permission. Defendant's use targets the follower list for marketing and advertisement of the services and products of his current employer, the Athletic.

29. To that end, Defendant pinned a lead post highlighting his move to the Athletic and soliciting subscriptions to the Athletic from the roughly 27,100 followers of the Account. Thus, Defendant has essentially taken BH Media's curated customer list (or at worst list of potential targets) to use for direct marketing on behalf of a direct competitor.

30. On July 11, 2018, BH Media sent a letter demanding that Defendant cease and desist from accessing the Account and to return the Trade Secrets and access to the Account.

31. As of the time of this filing, Defendant has not relinquished the Account, or provided the login information for access, and he continues to use BH Media property and Trade Secrets to actively and unfairly compete against it.

## COUNT I
### (Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836)

32. BH Media incorporates by reference the allegations contained in paragraphs 1-31 of the Complaint as if fully set forth herein.

33. The Trade Secrets at all relevant times constituted trade secrets as defined by the Defend Trade Secrets Act ("DTSA") in that they derive independent economic value from not being generally known to and not being readily ascertainable by BH Media's competitors and because BH Media takes precautions to maintain their confidentiality.

34. The Trade Secrets are related to BH Media's products and services used in, or intended for use in, interstate or foreign commerce. Among other things, they relate to BH Media's efforts to identify, engage with, and retain subscribers across the Country. Likewise, the follower list from the Account includes followers from across the Country, including states such as Tennessee and North Carolina, and includes international followers from locations such as the Netherlands.

35. At all times relevant hereto and as outlined herein, BH Media has undertaken reasonable efforts to preserve the confidentiality of and preclude the unauthorized use and disclosure of its confidential and trade secret information.

36. Defendant was given access to the Trade Secrets during, and in connection with, his employment and at all times had a duty to maintain the secrecy of such confidential information and Trade Secrets as an employee of BH Media.

37. Defendant misappropriated the Trade Secrets without BH Media's permission and for purposes unauthorized by BH Media and in excess of his authorization.

38. Defendant continues to use BH Media's confidential and proprietary information and trade secrets for his own benefit and to compete against BH Media to its detriment.

39. Defendant has not returned BH Media's confidential information and Trade Secrets, despite repeated demands to do so, including but not limited to the July 11, 2018 cease and desist letter.

40. Given his awareness of BH Media's claims, Defendant's misappropriation of BH Media's Trade Secrets is willful, malicious and with reckless disregard for BH Media's rights.

41. The value of lost opportunities to interact and associate with the Account's followers (some of whom have followed the Account for over eight years) is incalculable. As of now, the extent to which the misappropriation has resulted in lost customers, lost opportunities, or lost advertising revenue remains difficult if not impossible to value.

42. This is compounded by the fact that any attempt to recreate the Account would be futile. To re-establish the Account, BH Media would be forced to hire or redirect a full time employee to attempt to reengage roughly 27,100 followers. There is no guarantee that any or all of those followers would choose to follow the new account, that they would engage in the same

way, or that they would follow without the Account following them back. There is simply no way to identically recreate the Account.

43. Any attempt to recreate the Account would result in significant expense to BH Media. It would take an account representative or writer at BH Media seven years at a cost of at least $150,000 to attempt to recreate the Account, but any attempt at recreation would likely never result in the same configuration of followers. Thus, while the time and expense required to recreate the Account is partially estimable, there would be no way to recreate the Account identically.

44. Ultimately, Defendant's misappropriation of the Trade Secrets has damaged and will continue to damage BH Media in an amount to be proved at trial.

45. BH Media will continue to be damaged by Defendant's acts unless he is required to cease use of the Trade Secrets and return all information obtained without authority.

46. There is no adequate remedy at law for Defendant's continued possession, use, or distribution of the confidential information and Trade Secrets misappropriated from BH Media.

## COUNT II
**(Misappropriation Under the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336)**

47. BH Media incorporates by reference the allegations contained in paragraphs 1-46 of the Complaint as if fully set forth herein.

48. BH Media's confidential files and other proprietary business information constitute trade secrets as defined by the Virginia Uniform Trade Secrets Act ("VUTSA"), because they derive independent economic value from not being generally known to and not being readily ascertainable by BH Media's competitors and because BH Media takes precautions to maintain the confidentiality and secrecy of that information. Va. Code § 59.1-336.

49. Defendant was given access to the Trade Secrets during, and in connection with, his employment, and he had a duty to maintain the secrecy of such confidential and trade secret information as an employee of BH Media.

50. BH Media has undertaken reasonable efforts to preserve the confidentiality and preclude the unauthorized use and/or disclosure of its Trade Secrets.

51. Defendant misappropriated BH Media's proprietary information, including but not limited to the Account and its Trade Secrets, without BH Media's permission and for purposes not authorized by BH Media.

52. Defendant has not returned BH Media's Trade Secrets, despite BH Media's demands and continues to use the Trade Secrets for his own benefit, for the benefit of BH Media's direct competitor, and to the detriment of BH Media.

53. As a result of the unlawful conduct of Defendant, BH Media has suffered, and will continue to suffer, irreparable harm and damages in an amount to be proven at trial, and Defendant, upon information and belief, has been unjustly enriched by the misappropriation and use of the Trade Secrets.

54. BH Media will continue to be damaged by Defendant's acts unless he is required to cease use of and return to BH Media all Trade Secrets taken without authority.

55. There is no adequate remedy at law for Defendant's continued possession, use, or distribution of the Trade Secrets misappropriated from BH Media.

## COUNT III
**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*)**

56. BH Media incorporates by reference the allegations contained in paragraphs 1-55 of the Complaint as if fully set forth herein.

57. 18 U.S.C. § 1030(g) provides a private right of action for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA").

58. Defendant violated 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), and (a)(5)(C) by knowingly, intentionally, and with the intent to defraud, accessing the Account without authorization or otherwise in excess of his authorization, and obtained confidential and proprietary information and material belonging to BH Media by, at a minimum, accessing, manipulating, and posting content to BH Media's Account and follower list after his resignation on July 6, 2018.

59. BH Media's Account is a "protected computer" under the CFAA, which operates in interstate commerce given that it contains and advertises and markets to followers from various states, including Tennessee, North Carolina, and internationally in locations such as the Netherlands.

60. Defendant's authorization to access the Account was revoked as of the date of his resignation, July 6, 2018 and this revocation was reaffirmed on July 11, 2018 via cease and desist letter from BH Media's legal department.

61. Defendant deliberately disregarded those revocation demands and has continued to access and post content to the Account as of the date of this filing.

62. Defendant's unauthorized access has caused, and continues to cause, damage and loss in the form of attorneys' fees and the investigative time and efforts of BH Media's employees, which were incurred as BH Media worked to determine the extent of the unauthorized access, the nature of the information taken, and the avenues for resolution.

63. The damages and loss to BH Media as a direct result of Defendant's actions exceed five thousand dollars ($5,000) in one year.

## COUNT IV
**(Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.)**

64. BH Media incorporates by reference the allegations contained in paragraphs 1-63 of the Complaint as if fully set forth herein.

65. 18 U.S.C. § 2707(a) creates a civil cause of action for violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* (the "SCA").

66. As shown in the conduct described throughout the Complaint, Defendant intentionally and willfully accessed and obtained stored electronic information and electronic communications without authorization or in excess of his authorization from BH Media's Account, including but not limited to the information available on the Account strictly accessible to the Account manager and not publicly available otherwise, the login information associated with the Account, and the DMs associated with the Account.

67. The Account constitutes "electronic communication services" and "electronic storage" as defined by 18 U.S.C. §§ 2510(15) and (17).

68. The aforementioned conduct violates the SCA and Plaintiff is entitled to actual damages and statutory damages.

69. Defendant's conduct described herein was willful and intentional and BH Media is entitled to punitive damages and attorneys' fees under 18 U.S.C. § 2707(c).

## COUNT V
**(Violation of the Virginia Computer Crimes Act, Va. Code § 18.2-152.2, *et seq*.)**

70. BH Media incorporates by reference the allegations contained in paragraphs 1-69 of the Complaint as if fully set forth herein.

71. Va. Code § 18.2-152.12 provides a civil remedy for violations of any article of the Virginia Computer Crimes Act (the "VCCA").

72. Defendant committed computer fraud in violation of Va. Code § 18.2-152.3 by using a computer or computer system without authority to convert the Account and Trade Secrets of BH Media.

73. Defendant committed computer trespass in violation of Virginia Code §§ 18.2-152.4(1) and (6) by using BH Media's Account and Trade Secrets to access the Account, which is "computer data" as defined by § 18.2-152.2 of the VCCA.

74. Defendant committed theft of computer services by willfully obtaining access to the Account after his resignation and without authority in violation of Va. Code § 18.2-152.6.

75. Defendant accessed, retained, manipulated, and posted to the Account after his employment with BH Media ended and without authority or permission. Those acts exceeded Defendant's authorization and access to BH Media's computers and computer network.

76. Defendant knew or should have known that he did not have authority to access the Account and Trade Secrets after his employment ended. Indeed, Defendant signed an acknowledgement that he read and understood and would abide by the Handbook pertaining to the use of computer systems, communications accounts, and social media, which specifically required return of all company property following his resignation.

77. Likewise, BH Media demanded his return of the Account, which was ignored.

78. Through the conduct described above, Defendant intentionally and maliciously used the Trade Secrets, accessed the Account, and used the Account to compete with or damage BH Media.

79. By committing the wrongful acts herein, Defendant violated the VCCA, Va. Code §§ 18.2-152.3(3), § 18.2-152.4(A)(1) and (6), and § 18.2-152.6 and has damaged BH Media as a result.

80. BH Media will continue to be damaged by Defendant's acts unless he is required to cease using any information obtained from BH Media without authority and return the same.

81. There is no adequate remedy at law for Defendant's continued possession of information misappropriated from BH Media.

82. Pursuant to § 18.2-152.12(A), BH Media is entitled to recover its actual damages, lost profits, and costs incurred in bringing this lawsuit.

## COUNT VI
### (Common Law Conversion)

83. BH Media incorporates by reference the allegations contained in paragraphs 1-82 of the Complaint, as if fully set forth herein.

84. At all times, BH Media was the owner of the Account and remains entitled to possession of, and exclusive access to, the Account. The Account and access to all of BH Media's roughly 27,100 followers generated in connection with the Account are the sole property of BH Media.

85. BH Media authorized Defendant to use the Account as an agent to act for BH Media in its best interests in the course of his employment. Once Defendant ceased to work for BH Media on July 6, 2018, Defendant was required to return the Account and all login information to BH Media.

86. On or about July 6, 2018, BH Media requested that Defendant relinquish the Account to BH Media, and once Defendant failed to comply, on July 11, 2018 again demanded return of the Account and login information.

87. Defendant refused to return the Account and the login information.

88. By refusing to relinquish the Account, Defendant has wrongfully and intentionally converted the Account to his own use. Defendant has used and continues to use the

Account to unfairly compete, communicate with, and market to the Account followers to promote a direct competitor's goods and services.

89. BH Media has clear legal ownership and right to possession of the Account, which includes confidential information and trade secrets of BH Media.

90. The Account would cost at least $150,000 to recreate, but would likely never be created in the same form, with the same follower list. Thus, at a minimum, the loss of the Account has damaged BH Media in the amount of $150,000.

91. The aforementioned acts of Defendant were willful, wanton, malicious, and oppressive, were undertaken with the intent to harm BH Media, and justify the awarding of punitive damages.

## COUNT VII
**(Breach of Fiduciary Duty)**

92. BH Media incorporates by reference the allegations contained in paragraphs 1-91 of the Complaint, as if fully set forth herein.

93. At all times during and after his employment, Defendant owed BH Media a fiduciary duty of loyalty to maintain the confidentiality of proprietary and confidential information to which he alone was entrusted.

94. Defendant breached his fiduciary duty of loyalty by misappropriating trade secrets, failing to return BH Media property and confidential information (including but not limited to the login information for the Account) upon resigning his position, misusing that confidential information to compete directly with BH Media, and using that information to interfere with existing and prospective customers via solicitation of BH Media's follower list.

95. As a direct and proximate result of those acts, BH Media has suffered, and will continue to suffer, harm to its competitive position, its customer relationships, its economic expectancies, its business reputation, and its goodwill.

96. As a result of the breach, BH Media has been damaged in an amount to be determined at trial.

97. Upon information and belief, the aforementioned acts of Defendant were undertaken with actual malice toward BH Media and/or with recklessness or negligence to BH Media's rights, justifying an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court (i) enter a temporary restraining order and preliminary injunction to maintain the status quo pending a trial on the merits as requested in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction filed contemporaneously herewith; (ii) enter a permanent injunction enjoining Defendant from accessing the Account; (iii) require Defendant to relinquish the Account login information to Plaintiff; (iv) enter judgment against Defendant and award BH Media actual, statutory, treble, exemplary, enhanced, and/or punitive damages, in an amount to be proved at trial on the claims made herein; (iv) award BH Media its costs and attorneys' fees incurred herein; (v) award BH Media pre-judgment and post-judgment interest; and (vi) enter an order for such other relief as the Court deems appropriate.

Respectfully submitted,

**BH MEDIA GROUP, INC.**

By: /s/ *Laura D. Windsor*
Laura D. Windsor, Esq. (VSB #70354)

Lwindsor@williamsmullen.com
Meredith M. Haynes, Esq. (VSB # 80163)
MHaynes@williamsmullen.com
Dirk D. Lasater (VSB # 92800)
Dlasater@williamsmullen.com
WILLIAMS MULLEN, P.C.
200 South 10th Street
Richmond, Virginia 23219
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
*Counsel for Plaintiff*