IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

BH Media Group, Inc.,

    Plaintiff/Counterclaim Defendant,

v.                                        Case No.: 7:18-cv-00388

Andy Bitter,

    Defendant/Counterclaim Plaintiff.

### BH MEDIA'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS COUNTERCLAIM

Plaintiff and Counterclaim Defendant BH Media Group, Inc. ("BH Media"), by counsel, pursuant to Local Civil Rule 11(c) of the Rules of the United States District Court for the Western District of Virginia, submits this memorandum in support of its motion to dismiss the Counterclaim filed by Defendant and Counterclaim Plaintiff Andy Bitter ("Bitter").

### INTRODUCTION

On August 6, 2018, BH Media filed a Complaint alleging that Bitter misappropriated a Twitter account and associated data from BH Media for use with his new employer. On August 30, 2018, Bitter filed an Answer generally denying BH Media's allegations. Bitter also filed a Counterclaim detailing his defense to BH Media's claim and asserting a counterclaim for defamation. The allegedly defamatory statements are contained in a news article published by *The Roanoke Times* (the "*Times*") reporting the allegations in BH Media's lawsuit. BH Media owns the *Times*.

As a matter of law, none of the statements in the *Times*' article supports a cause of action for defamation. Bitter complains that the article conveys the false message that he

is "dishonest" because he "took" BH Media's property. That message is delivered, if at all, by the portions of the article summarizing BH Media's explicit allegations to that effect in the Complaint, not by the two statements Bitter cites from the article concerning how he acquired the Twitter account and the date on which BH Media asked him to relinquish it. Simply put, the two statements from the *Times'* article on which Bitter bases his Counterclaim are not defamatory. Replacing the two allegedly false statements with the purported truth would not change the article's defamatory sting, which, again, emanates from BH Media's Complaint explicitly alleging that Bitter misappropriated the company's property. In the context of the entire *Times* article, the two statements relied upon by Bitter are immaterial to the delivery of any defamatory sting and, therefore, are not actionable in defamation.

Furthermore, although the two criticized statements do not quote the Complaint verbatim, neither represents a substantial departure from the allegations set forth in BH Media's pleadings. Consequently, the statements are absolutely privileged and cannot form the basis for Bitter's defamation Counterclaim. Bitter's attempt to avoid the absolute privilege based on BH Media's status as a purported "vindictive employer" has no merit. This Court has previously recognized that the absolute privilege applies to media and non-media parties alike.

The two statements forming Bitter's defamation Counterclaim are not defamatory, are immaterial to the delivery of any defamatory message, and are absolutely privileged. For each of these reasons, the Counterclaim fails to state a claim for defamation upon which relief may be granted and should be dismissed.

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal when a counterclaim fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the [counterclaim] as true and draw all reasonable inferences in favor of the plaintiff." *Guthrie v. McClasky*, No. 1:11-cv-61, 2012 WL 1237749, at *1 (W.D. Va. Apr. 12, 2012) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)). The Court, however, is not bound by a counterclaim's legal conclusions. *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). "Indeed, a court will accept neither 'legal conclusions drawn from the facts' nor 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Nexus Servs., Inc. v. Vance*, No. 5:17-cv-00072, 2018 WL 542977, at *2 (W.D. Va. Jan. 24, 2018) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Additionally, the court may consider documents attached to the counterclaim and take judicial notice of matters of public record "so long as they are integral to the [counterclaim] and authentic." *Parker v. Austin*, 105 F. Supp. 3d 592, 596 n.2 (W.D. Va. 2015) (quoting *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir.2009)).

## FACTS ALLEGED

On September 7, 2018, the Court held a status conference during which the parties' counsel discussed the issues presented in this case. Additionally, an evidentiary hearing on BH Media's motion for a temporary restraining order and preliminary injunction is scheduled for September 25, 2018. Therefore, the Court is or will be familiar with the background of this action, including the parties' factual and legal assertions. This

memorandum focuses solely on aspects of the record most pertinent to Bitter's Counterclaim.

BH Media filed its Complaint against Bitter on August 6, 2018. The Complaint asserts various claims against Bitter arising out of his alleged misappropriation and unauthorized use of a Twitter account and associated data that BH Media contends it owns. (*See* ECF No. 1.) One day after filing the Complaint, BH Media moved the Court for entry of a temporary restraining order and preliminary injunction restraining Bitter from further possession and use of the account and data. (*See* ECF No. 5.)

On August 7, 2018, the *Times* published a news article, entitled "Roanoke Times sues former sportswriter over continued use of Twitter account," that summarized BH Media's pleadings. The article opens with a basic description of the lawsuit:

> The parent company of The Roanoke Times has sued its former Virginia Tech football writer Andy Bitter to recover the Twitter account he used at the newspaper and still is using at a competitor.
>
> BH Media Group asked a judge to take immediate action on grounds that the account and the access it provides to 27,300 followers are company property. By using the account without BH Media permission at the Athletic, an online sports publication, Bitter has committed a host of violations of state and federal law including theft of trade secrets and unfair competition, the suit says.

(*See* Counterclaim, Ex. A.) The article proceeds to report BH Media's allegations. Throughout, the article uses phrases such as "the suit says" and "according to the suit," making clear that the article was summarizing BH Media's pleadings. (*See generally, id.*)

On August 30, 2018, Bitter filed an Answer to BH Media's Complaint generally denying BH Media's allegations and a Counterclaim that elaborates on Bitter's general denial. (*See* ECF No. 10 ("Counterclaim").) The Counterclaim asserts a single count for "Defamation" based the following two statements in the *Times*' news article:

4

> 1. "The company gave Bitter the login for the Twitter account, and Bitter alone has had access to it since then, the suit said."
>
> 2. "On June 22, when Bitter notified his supervisor that he was leaving the paper, management asked him to relinquish the Twitter account and password so that it could be provided to his replacement."

(*See id.* at ¶¶ 45, 50.) Bitter contends that the first statement is false because Bitter received the account from his predecessor, Kyle Tucker ("Tucker"), whom Bitter alleges owned the account and effectively transferred his ownership to Bitter. Bitter contends that the second statement is false because BH Media asked Bitter to relinquish the account on July 6, 2018, the day Bitter resigned from the *Times*, not June 22, 2018, the day Bitter announced his intent to resign. (*See id.* at ¶¶ 3, 46, 50.) Additionally, Bitter denies that the statements fairly summarize the allegations in BH Media's pleadings, and, therefore, are not privileged. (*Id.* at ¶¶ 47, 50.) If the statements do fairly summarize BH Media's pleadings, Bitter contends that the privilege still does not apply because BH Media published the article "not as a media organization . . . but as a vindictive former employer acting with malice toward its former reporter." (*Id.* at ¶ 52.)

## ARGUMENTS AND AUTHORITIES

### I. Virginia Law Governs Bitter's Defamation Counterclaim.

This Court has diversity jurisdiction over Bitter's Counterclaim. (Counterclaim at ¶ 5.) A federal court sitting in diversity applies the substantive law of the forum state and federal procedural law. *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 511-512 (E.D. Va. 2011) (citation omitted). Virginia is the forum state. "Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong, to defamation actions." *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 607 (E.D. Va. 2005) (citing *Heishman, Inc. v. Fox Television Stations, Inc.*, 217 F. Supp.2d 690, 694 n. 5 (E.D. Va. 2002)). For purposes

of defamation, the place of the wrong is the state in which the allegedly defamatory statement is published. *See id.* (citing *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp.2d 909, 915 n. 4 (E.D. Va. 2004)); *Fryfogle v. First Nat. Bank of Greencastle*, No. 6:07-cv-00035, 2009 WL 700161, at *3 (W.D. Va. Mar. 17, 2009) ("In defamation cases, the place of the harm is where the alleged defamatory statements were published.") (citations omitted).

It can be reasonably inferred from the Counterclaim that the news article was published in Virginia, where the *Times* is located. (Counterclaim at ¶¶ 3, 6.) Therefore, Virginia law governs Bitter's Counterclaim for defamation.

## II. <u>The Allegedly False Statements Are Not Defamatory.</u>

A statement is not actionable in defamation simply because it is false. Under Virginia law, the statement must also be defamatory. *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015) (citation omitted). That is, the statement must deliver the requisite defamatory "sting" to one's reputation. *Schaecher*, 290 Va. at 92, 772 S.E.2d at 594 (citations omitted). Words that are merely offensive will not suffice. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). The sting must "tend[] to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* (quoting *Moss v. Harwood*, 102 Va. 386, 392, 46 S.E. 385 (1904)). The sting may be delivered directly, or by inference, implication or insinuation. *Perk v. Vector Res. Grp., Ltd.*, 253 Va. 310, 316, 485 S.E.2d 140, 144 (1997) (quoting *Carwile v. Richmond Newspapers*, 196 Va. 1, 82 S.E.2d 588, 592 (1954)). However, a plaintiff may not rely on innuendo to extend the meaning of

6

the words used beyond their "ordinary and common acceptation." *Id*. In other words, a plaintiff may not torture the plain meaning of the words to manufacture a defamatory implication. *See Chapin*, 993 F.2d at 1094.

Whether a statement is defamatory, and thus actionable, is an issue of law to be determined by the Court. *Nexus Servs., Inc.*, 2018 WL 542977 at *5 (citing *Hatfill v. New York Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005); *accord Chapin*, 993 F.2d at 1092 (citing *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985)). Indeed, "[e]nsuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court." *Webb v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 90, 752 S.E.2d 808, 811 (2014). *See also Nexus Servs., Inc.*, 2018 WL 542977 at *5 ("the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory.") (quoting *McCray v. Infused Sols., LLC*, No. 4:14-cv-l58, 2017 WL 4111958, at *3 (E.D. Va. Sept. 15, 2017)).

On their face, statements about who specifically provided the Twitter account login information to Bitter and the precise date on which BH Media asked Bitter to relinquish the account do not "so harm the reputation of [Bitter] as to lower him in the estimation of the community or . . . deter third persons from associating or dealing with him, such as by making [Bitter] appear odious, infamous, or ridiculous, or subjecting [him] to contempt, scorn, shame, or disgrace." *Schaecher*, 290 Va. at 95, 772 S.E.2d at 595–96 (internal quotations and source omitted). Employees are provided company property, and asked to return company property, every day in workplaces across the nation and are not thereafter viewed by the public in an odious light. *Cf. Ramey v. Kingsport Pub. Corp.*, 905 F. Supp.

7

355, 359 (W.D. Va. 1995) (false statement that plaintiff refused to speak to police not defamatory because people routinely exercise right against self-incrimination and public does not assume wrongdoing). Bitter does not allege that the two criticized phrases, by their plain and express terms, convey a defamatory meaning. Consequently, the statements are not actionable unless they deliver a defamatory message by implication. *See Schaecher*, 290 Va. at 96, 772 S.E.2d at 596 ("The face of these emails does not reasonably convey defamatory 'sting.' We thus turn to the innuendo articulated in the pleading, explaining the allegedly defamatory meaning, to consider whether the pleading guides us to a defamatory implication in the words that is not immediately apparent.") (citation omitted).

Bitter complains that the two statements in the article "give rise to the inference that Bitter is a dishonest employee who took property from his employer." (*See* Counterclaim at ¶ 57.) Reporting that "the suit said" that "[t]he company gave Bitter the login for the Twitter account, and Bitter alone has had access to it since then" does not imply that a final determination has been made that Bitter did, in fact, take property belonging to BH Media. *See Dangerfield v. WAVY Broad., LLC*, 228 F. Supp. 3d 696, 702 (E.D. Va. 2017) (broadcast reported that the plaintiff was "accused of rape;" holding that "Plaintiff may not extrapolate beyond the 'plain and natural' meaning of words to claim that Defendants' broadcast stated that Plaintiff was a 'rapist.'") (citation omitted); *see also Whitaker v. Wells Fargo Advisors, LLC*, No. 3:11CV380-HEH, 2011 WL 4565430, at *3 n.3 (E.D. Va. Sept. 29, 2011) ("In representing merely that the [employee] was discharged after 'allegations were made that accused him' of misconduct, an affirmative answer to Question 7F(1) neither indicates nor implies that the employee actually committed the underlying misdeeds."). The implied defamatory message, as articulated by Bitter, fails

because it exceeds the ordinary and plain meaning of the words actually used in the *Times*' article, making that which is uncertain appear certain. *Webb*, 287 Va. at 90, 752 S.E.2d at 811 (quoting *Carwile*, 196 Va. at 8, 82 S.E.2d at 592)).

Even ignoring the article's numerous qualifying statements establishing that it was merely reporting allegations from BH Media's lawsuit, reporting that the company provided the Twitter account login to Bitter and that Bitter was subsequently asked to relinquish the account does not imply that Bitter "took" anything. Rather, the message that Bitter "took" the property is delivered, if at all, by the portions of the article summarizing BH Media's express allegations to that effect. For example, the article reports that "the suit said" that Bitter "refused" to relinquish the account "and is now 'exercising dominion over BH Media's property to its ongoing detriment and irreparable harm.'" (*See* Counterclaim, Ex. A.) The article also reports that "BH Media asked a judge to bar Bitter from further posting [on the account], force him to surrender the login information and have him reimburse the company for its legal costs related to the suit." (*Id.*) If readers reasonably inferred from the article that Bitter "took" BH Media's property, they did so based on express statements such as these, not statements about who gave the property to Bitter or when Bitter was asked to relinquish it.

Furthermore, taking BH Media's property, in the context of the article as a whole, does not imply dishonesty. The article reports that "the suit said" that BH Media asked Bitter to relinquish the account and he refused. (*See* Counterclaim, Ex. A.) There is no suggestion in the article that Bitter secretly absconded with the property or that he mislead BH Media about his intentions to return it. The message is clear that the parties openly

9

disagree on who owns the account. Bitter cannot torture the article's language as implying that Bitter's position, while legally incorrect, is "dishonest." *See Chapin*, 993 F.2d at 1094.

Fundamentally, there is a disconnect between the statements upon which Bitter bases his defamation claim and the defamatory sting of which he complains. The disconnect is fatal to Bitter's Counterclaim. *See Dangerfield*, 228 F. Supp. 3d at 705 ("[T]he falsity of a statement and the defamatory 'sting' of the publication must coincide.") (quoting *Chapin*, 993 F.2d at 1092). The statements in the article concerning who provided the Twitter account to Bitter and the exact date on which Bitter was asked to relinquish the account, even if they inaccurately report BH Media's allegations, are not defamatory on their face, nor do they convey a defamatory message by implication. The defamatory message that Bitter "took" BH Media's property is delivered, if at all, in direct terms, and there is no suggestion in the article, direct or otherwise, that Bitter acted dishonestly.

## III. **The Alleged Falsity Is Immaterial To the Defamatory Sting.**

Under Virginia law, a statement is not actionable in defamation unless it is substantially false. *See Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713, 724–25 (1985) (the plaintiff in a defamation action has the burden of proving that the statement is false).[1] "A plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 207 (2005) (citing *Saleeby*

---

[1] At common law, falsity was presumed and the defendant bore the burden of proving that the defamatory statement was true, or substantially true. Now, however, the burden is on the plaintiff to show that the statement was false, or substantially false. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109–10 (10th Cir. 2017) (explaining the historical shift from the affirmative defense of substantial truth to the plaintiff's burden of "material falsity"); *see also Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) ("falsity must be 'material'") (quoted source omitted). *See also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (First Amendment demands that defamation plaintiff prove falsity).

*v. Free Press, Inc.*, 197 Va. 761, 763, 91 S.E.2d 405, 407 (1956)). *See also AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) ("If the gist or 'sting' of a statement is substantially true, minor inaccuracies will not give rise to a defamation claim.") (quotations and source omitted). Whether a statement's falsity is sufficiently material depends on the statement's relationship to the defamatory sting. "A statement 'is not considered false' and thus actionable 'unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)).

Again, Bitter complains that the article conveys the message that he "took" property belonging to BH Media, and thus portrays him as a "dishonest" employee. (Counterclaim at ¶ 57.) As noted in Section II above, if at all, that message is delivered by express statements in the article that are not the basis for Bitter's defamation Counterclaim. Thus, replacing the two statements on which Bitter does base his Counterclaim with Bitter's version of the truth about how he acquired the property and when he was asked to relinquish it would not alter the article's defamatory sting; the portions of the article damaging to Bitter's reputation remain in place. Consequently, the two allegedly false statements in the article, for purposes of defamation, are too immaterial to support an action for defamation. *See AIDS Counseling & Testing Centers*, 903 F.2d at 1004 (statements were immaterially false because had the broadcast reported the alleged truth, "[t]here can be little doubt that . . . the story would have affected [the plaintiff's] reputation in the community in substantially the same manner.").

## IV. The Statements Are Absolutely Privileged.

"[T]he public interest is best served when individuals who participate in law suits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy." *Watt v. McKelvie*, 219 Va. 645, 651, 248 S.E.2d 826, 829 (1978) (citation omitted). Thus, it is well-settled in Virginia that statements made during the course of a judicial proceeding are absolutely privileged from liability in defamation. *See id.*; *accord Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 537, 369 S.E.2d 857, 860 (1988). As a corollary to the rule protecting statements made in judicial proceedings, the republication of those statements is absolutely privileged as long as "the publication is a fair and substantially correct statement of the transcript of the record." *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956); *Vaile v. Willick*, No. CIV. A. 6:07CV00011, 2008 WL 2754975, at *7 (W.D. Va. July 14, 2008) ("The publication of public records to which everyone has a right of access is absolutely privileged in Virginia."). *See also Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 135 (E.D. Va. 1971) (allegations made in pleadings were material to the litigation; therefore, a report summarizing the allegations was privileged if a fair and accurate account of the record).

The privilege protecting reports of judicial proceedings encourages dissemination of information to the public concerning official proceedings to enable the public to exercise informed supervision over its governmental institutions. To serve this objective, the privilege necessarily must be broad in application. Hence, it applies even if the reported statements are false. *See Alexandria Gazette Corp.*, 198 Va. at 159–60, 93 S.E.2d at 279 (citations omitted); *accord Vaile*, 2008 WL 2754975 at *7 ("The privilege is not lost if the record is incorrect or if it contains falsehoods."). It applies even though the statements are

12

not reported verbatim, and even if the report is not "exactly correct." *Alexandria Gazette Corp.*, 198 Va. at 163, 93 S.E.2d at 282. As long as the publication is not a "substantial departure" from the substance of the record being reported, it is privileged. *Id.*; *see also Vaile*, 2008 WL 2754975 at *7 ("If the publication substantially departs from the proceeding or record, however, then the privilege is lost."); *Rush v. Worrell Enterprises, Inc.*, 21 Va. Cir. 203, 1990 WL 751410, at *3 (Charlottesville Cir. Ct. Sept. 10, 1990) (same). Application of the privilege is a threshold issue of law for the Court. *See Alexandria Gazette Corp.*, 198 Va. at 163–64, 93 S.E.2d at 281–82.

The Counterclaim acknowledges, as it must, that the *Times'* article reported the allegations in BH Media's pleadings. (*See* Counterclaim at ¶ 3; *see also id.*, Ex. A). Accordingly, the Counterclaim invokes the privilege. The truth or falsity of BH Media's allegations in its Complaint is irrelevant. The only issue is whether the article's recitation of those allegations constitutes a "substantial departure" from BH Media's pleadings. *See Vaile*, 2008 WL 2754975 at *7.

Preliminarily, Bitter contends that the privilege does not apply because BH Media purportedly published the news article not as a media organization, but purportedly as a "vindictive former employer." (*See* Counterclaim at ¶¶ 4, 52.) The distinction, even if accepted, is of no moment. The privilege is available to media and non-media defendants alike. *See James v. Powell*, 154 Va. 96, 112, 152 S.E. 539, 545 (1930) (the privilege "is not changed because the publication chanced to be in a newspaper. A newspaper has no more right to circulate a libel than has an individual."); *accord Vaile*, 2008 WL 2754975 at *7 n.3 ("This privilege applies to media and non-media defendants alike.") (citing Restatement (Second) of Torts § 611). *See also Bull*, 323 F. Supp. at 135 (former

employee's press release reporting the allegations of his own complaint against the plaintiff was privileged because it fairly summarized the employee's allegations).

Bitter notes that whereas the *Times*' article reports that "[t]he company gave Bitter the login for the Twitter account," BH Media's Complaint does not identify who provided Bitter the login information. (Counterclaim at ¶ 45.) In fact, Bitter's predecessor, Tucker, provided Bitter the login information, which Bitter contends diminishes BH Media's claim of ownership. (*Id.* at ¶¶ 48-49; *see also id.* at ¶ 45 (who specifically gave Bitter the login information is "an issue of critical importance to this case")). Hence, Bitter believes the distinction is significant.

BH Media's Complaint acknowledges that Tucker created the account, but it alleges that he did so "within the scope of his employment" with *The Virginian-Pilot* (the "*Pilot*") and that the content of the account "was to be owned by the *Pilot*" and licensed to the *Times*. (*See* Complaint, ECF No. 1, at ¶¶ 10-11.) The Complaint alleges further that when Tucker retired in August 2011, he "relinquished the [a]ccount to the *Pilot*." (*Id.* at ¶ 12.) Bitter was hired in October 2011 to replace Tucker, and "[i]n addition to taking over Tucker's reporting obligations, [Bitter] was provided access to and the login information[.]" (*Id.* at ¶¶ 13-14.) Thus, although the Complaint does not mention that Tucker specifically provided access to Bitter, it is reasonably inferred from the allegations that whoever provided access to Bitter when he was hired to replace Tucker did so on the *Pilot*'s behalf. In any event, drawing such an inference from the account, even if not exactly correct, does not constitute a substantial departure from BH Media's allegations. *Alexandria Gazette Corp.*, 198 Va. at 163, 93 S.E.2d at 282.

14
Case 7:18-cv-00388-MFU Document 23 Filed 09/20/18 Page 14 of 17 Pageid#: 323

Bitter also complains that whereas the Complaint alleges that BH Media asked him to relinquish the account on July 6, 2018, the day he resigned, the *Times*' article states that he was asked on June 22, 2018, the day he announced his intention to resign. (*See* Counterclaim at ¶ 50.) Bitter contends that the distinction is important because, again, he believes it undermines BH Media's claim of ownership. (*See id.* at 51 (June 22 date reported in the article "implies that the decision by BH Media to seek the return of the Account was made immediately, with diligence, and with repeated notice to Bitter")). Accepting Bitter's proposition that the two-week difference is relevant to issues of proof in this case, it is not important for purposes of the privilege. Undeniably, the Complaint alleges that BH Media asked Bitter to relinquish the account in connection with his resignation. Reporting that BH Media did so when Bitter announced his intention to resign instead of two weeks later when Bitter actually resigned does not constitute a substantial departure from the Complaint.

The criticized statements, even if not exactly correct, do not substantially depart from BH Media's allegations. Accordingly, they are absolutely privileged and cannot support Bitter's defamation counterclaim. The Counterclaim, therefore, should be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, BH Media respectfully requests that its motion be granted; that the Counterclaim be dismissed in its entirety with prejudice; and that BH Media be granted any additional relief that this Court deems fair and just.

Dated: September 20, 2018.        Respectfully Submitted,

BH MEDIA GROUP, INC.

By Counsel

/s/ Craig T. Merritt
Craig T. Merritt (VSB No. 20281)
David B. Lacy (VSB No. 71177)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:   (804) 697-4100
Fax:   (804) 697-4112
cmerritt@cblaw.com
dlacy@cblaw.com

Laura D. Windsor (VSB No. 70354)
Meredith M. Haynes (VSB No. 80163)
Dirk D. Lasater (VSB No. 92800)
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23219
Tel.:   (804) 420-6466
Fax:   (804) 420-6507
lwindsor@williamsmullen.com
mhaynes@williamsmullen.com
dlasater@williamsmullen.com

*Counsel for BH Media Group, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


/s/ Craig T. Merritt
Craig T. Merritt (VSB No. 20281)
cmerritt@cblaw.com
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:    (804) 697-4100
Fax:    (804) 697-4112


#2382293